UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD LEE LATTA,

       Petitioner,                            CASE NO. 2:10-cv-13546

v.                                   JUDGE DENISE PAGE HOOD
                                          MAGISTRATE JUDGE PAUL J. KOMIVES

BONITA HOFFNER,

       Respondent[1]

_____/

## REPORT AND RECOMMENDATION

I.     RECOMMENDATION: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    REPORT: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . 3
     C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     D.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
          1.    *Sufficiency of the Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
          2.    *Denial of a Fair Trial Based on Prior Bad Acts Evidence* . . . . . . . . . . 15
          3.    *Ineffective Assistance of Counsel for Failing to Object to Jail Reference* 19
          4.    *Ineffectiveness of Counsel for Failing to Object to Religious References* 24
          5.    *Sentencing Guidelines* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
     E.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . 29
          1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
     F.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . 32

_____

      [1]By order entered this date, Bonita Hoffner has been substituted in place of Debra Scutt as the proper respondent in this action.

1

I.     <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.

II.    <u>REPORT</u>:

A.     *Procedural History*

1.     Petitioner Gerald Lee Latta is a state prisoner, currently confined at the Lakeland Correctional Facility in Coldwater, Michigan.

2.     On January 17, 2007, petitioner was convicted of first-degree criminal sexual conduct (CSC), MICH. COMP. LAWS § 750.520b(1)(g), and contributing to the delinquency of a minor, MICH. COMP. LAWS § 750.145, following a jury trial in the Branch County Circuit Court.  On February 16, 2007, he was sentenced to a term of 23 - 40 year's imprisonment for the CSC-I conviction and 90 day's imprisonment for the conviction of contributing to the delinquency of a minor.

3.     Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

> I.     The evidence was insufficient to find defendant guilty beyond a reasonable doubt of first-degree criminal sexual conduct.
>
> II.    Defendant was denied a fair trial when the prosecutor was allowed to admit, over objection, highly prejudicial evidence that defendant had been previously convicted of criminal sexual conduct with his own niece.
>
> III.   Defendant was denied a fair trial and effective assistance of counsel by the introduction of evidence that he was in jail when the police found him and that he was living in a homeless shelter.
>
> IV.    Defendant was denied a fair trial and effective assistance of counsel by the admission of testimony that the complainant was very "God-fearing" and "really got the faith."

2

      V.      Defendant was denied his due process right to sentencing based upon accurate information by the trial court's erroneous scoring of the sentencing guidelines and its failure to resolve defendant's challenge to the complainant's allegations.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

*See People v. Latta*, No. 281297, 2009 WL 387731 (Mich. Ct. App. Feb. 17, 2009) (per curiam).

    4.     Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Latta*, 485 Mich. 862, 771 N.W.2d 764 (2009).

    5.     Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on September 9, 2010. As grounds for the writ of habeas corpus, he raises all five issues raised on appeal.

    6.     Respondent filed his answer on February 15, 2011. He contends that: (1) the evidence was sufficient to support his conviction, (2) admission of prior acts evidence did not deprive petitioner of a fair trial, (3) trial counsel was not ineffective for failing to object to evidence that petitioner was in jail when the police found him or that petitioner had been homeless, (4) trial counsel was not ineffective for failing to object to the mention of the victim's religious faith, and (5) petitioner's due process rights were not violated because he is unable to establish that he was sentenced based on materially false information. Respondent also contends that petitioner should be denied any requested discovery, evidentiary hearings, bond, oral argument, certificate of appealability, or any other relief he seeks in this action.

    8.     Petitioner filed a reply to respondent's answer on April 25, 2011.

B.    *Factual Background Underlying Petitioner's Conviction*

    The Michigan Court of Appeals accurately summarized the facts adduced at trial.

The 42-year-old defendant was convicted of sexually abusing the 16-year-old victim on May 29, 2004. Defendant met the victim through his niece and worked on a church project with her. A week before the incident, defendant came to the victim's house and expressed a desire to be her boyfriend. On the day of the incident, defendant and the victim talked on the phone, and defendant came to the victim's house at about 2:30 p.m., with a bottle of Bacardi Gold rum. The victim testified that she and defendant drank the rum mixed with soda, played games, and did silly things. The victim began to feel "funny" and to go "in and out of it" because of the alcohol. She recalled that defendant pulled down her pants and digitally penetrated her vagina before putting his penis in her vagina. The victim did not recall defendant leaving and later woke up in her bedroom. She went to the bathroom and saw "spots of blood" when she wiped. The victim was scared and called her high school counselor. The counselor testified that the victim was crying and indicated that she saw blood in her vaginal area. The counselor called for assistance and remained on the phone until it arrived.

Paramedics testified that the victim was groggy, sleepy, and drowsy, and sitting on the floor "in a fetal position," rocking back and forth; she was crying and would not talk about what happened. When the victim's mother arrived, she talked to the victim and reported to the police that the victim had been sexually assaulted. The victim was transported to the hospital and examined. Medical personnel observed a bruise on her back and one on her inner arm, which the victim testified she did not have before the incident. No injuries were found in the vagina area. In June 2004, the victim wrote a letter describing the events of May 29, 2004, and naming defendant as the perpetrator. Deoxyribonucleic acid (DNA) testing of semen taken from the victim's vaginal and anal areas on the day of the incident revealed the presence of DNA that matched a DNA sample taken from defendant. A fingerprint from a rum bottle found in a trash can in the victim's house matched defendant's fingerprint. The police also recovered tissue with droplets of blood from a bathroom trashcan on the day of the incident.

In an initial interview, defendant denied being at the victim's house and stated that because of a prior conviction, "he doesn't allow himself to be alone with young girls." At trial, defendant admitted having sex with the victim, but claimed that it was consensual. Defendant claimed that he and the victim were good friends and that she eventually began to flirt with him, ultimately inviting him to her home on two occasions. During the May 29, 2004, visit, they played games, drank rum and coke, conversed about the victim's family, and the victim told defendant that she wanted to have sex with him. Defendant stated that after he and the victim had consensual sex, he put on her pants, placed her in bed, cleaned up, threw away the rum bottle, and left. Other witnesses, including defendant's sister, a friend of defendant's niece, and defendant's niece, testified for the defense.

*Latta*, 2009 WL 387731, at *1.

4

C.      *Standard of Review*

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted on April 24, 1996 and governs all applications for relief filed after that date.  Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).  Since petitioner filed his application on September 9, 2010, it is subject to the substantive standards for granting habeas relief amended by the AEDPA.

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); see also, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A state court's decision is 'contrary to'...clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); see also, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694.  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme]

Court but unreasonable applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); see also, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); see also, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-71 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases-indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell* 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings os the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's

resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.     *Analysis*

1.     *Sufficiency of the Evidence*

When reviewing a claim of insufficient evidence, a federal court is only permitted to grant a writ when the decision of the state court is contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).  The standard for review of insufficiency claims was set forth in *Jackson v. Virginia*, where the Supreme Court stated that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could find that the essential elements of the crime beyond a reasonable doubt." 443 U.S. 307, 319 (1979). The Supreme Court has stated unequivocally that, since the adoption of the AEDPA, the deference required to state courts by *Jackson* creates a high standard for proving insufficiency claims.  "We have made clear that *Jackson* [insufficiency of evidence] claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson,* 566 U.S. ___, ___, 132 S. Ct. 2060, 2061 (2012).

In applying this standard, the Sixth Circuit has stated "'[we] will reverse a judgment for insufficiency of evidence only if this judgment is not supported by substantial and competent evidence upon the record as a whole, and . . . this rule applies whether the evidence is direct or wholly circumstantial.'"  *United States v. Beddow*, 957 F.2d 1330, 1334 (6th Cir. 1992) (quoting

*United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984)).  As the Supreme Court has stated, "federal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."  *Marshall v. Lonberger*, 459 U.S. 422, 434 (U.S. 1983).  Therefore, habeas courts must give the state court's determination of the facts the presumption of correctness, and view both circumstantial and direct evidence as equally able to support a conviction.

Additionally, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court."  *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011) (per curiam).  Therefore, "this means a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"  *McDaniel v. Brown*, 130 S. Ct. 665, 673 (2010) (per curiam) (quoting *Jackson*, 443 U.S. 307, 326 (1979)).

The Michigan Court of Appeals applied the *Jackson* standard when reviewing petitioner's conviction.  The relevant statute states a "person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person" and "causes personal injury to the victim, and the actor knows or has reason to know that the victim is mentally incapable, mentally incapacitated, or physically helpless."  MICH. COMP. LAWS § 750.520b(1)(g).  Personal injury is further defined as "bodily injury, disfigurement, mental anguish, chronic pain, pregnancy, disease, or loss or impairment of a sexual or reproductive organ."  MICH. COMP. LAWS § 750.520a(n).  The evidence in this case was sufficient to find personal injury in the form of mental anguish or bodily injury.

8

First, petitioner contends that there was not sufficient evidence to prove that the personal injury element was satisfied by a bodily injury. He states that, upon examination at the hospital, no injuries were found to the victim's vaginal area and that she could not state where the bruises located on her arm and lower back had come from. The Michigan Court of Appeals has previously stated that, "[to] satisfy the bodily injury component, the injuries suffered need not be permanent or substantial." *People v. Jenkins*, 121 Mich. App. 195, 198, 328 N.W. 2d 403, 404-05 (1982) (citing *People v Kraai*, 92 Mich App 398, 285 NW2d 309 (1979) (rejected in part on other grounds by *People v. Patrella*, 424 Mich. 221, 258-59, 380 N.W. 2d 11, 28 (1985)). "We believe that such bruising, caused by the forceful application of a hand, constitutes personal injury within the meaning of the applicable statutory definition." *People v. Hollis*, 96 Mich. App. 333, 337, 292 N.W. 2d 538, 540 (1980) (determining that testimony of being grabbed by the throat and thrown onto bed leaving only minor cuts a bruises satisfied the personal injury element); *see also, People v. Wheeler*, No. 289331, 2010 WL 1790441, at *2 (Mich. Ct. App. May 4, 2010). The bruises suffered by the victim in this case were discovered upon examination in the emergency room after the victim complained to the nurse that her back was hurting. Though she did not testify that she was aware that she acquired the bruises during the assault, she did state that she did not recall having the bruises prior to the assault.

Petitioner's contention that, due to the fact that there were no injuries specifically to the vaginal area, the evidence is not sufficient to meet the *Jackson* standard is incorrect. The statute requires only a "bodily injury," MICH. COMP. LAWS § 750.520a(n), not injury to any specific part of the body. Both a jury and the Michigan Court of Appeals found the evidence sufficient under Michigan law to convict petitioner. The verdict of the jury is presumed to be correct because the

9

credibility of witnesses cannot be reassessed upon habeas review in a federal court. The evidence presented that the victim had bruises after the assault was sufficient to find personal injury under Michigan's CSC-I statute.

Further, if this Court were to find that the bruising was not sufficient to establish personal injury, the evidence supporting personal injury in the form of mental anguish was amply sufficient for conviction. The Michigan Supreme Court has stated that mental anguish is "extreme or excruciating pain, distress, or suffering of the mind." *People v. Petrella*, 424 Mich. 221, 227 (1985). The Michigan Court of Appeals found evidence of mental anguish and recited the facts at trial as follows:

> The counselor testified that immediately after the assault, the 16-year-old victim called her and was crying and could hardly speak. When the paramedics arrived, the victim was crying and "in a fetal position," rocking back and forth. When a paramedic tried to provide assistance, the victim lashed out and attempted to strike the paramedic. A police officer described the victim as "hysterical." The victim's mother described the victim as "out of it," nonsensical, could hardly speak, and "totally irrational, upset, freaking out." A police officer testified that the victim "crawled back into a shell" when he tried to question her at the hospital. The victim's mother testified that the victim was "scared to death to come home," afraid to be in the house, and afraid when the phone rang. The victim's aunt testified what when defendant tried to contact her, the victim "handed [her] the phone because she was scared," "started crying," and would "go and hide." The testimony was sufficient to enable a jury to reasonably infer that the victim experienced extreme distress or suffering of the mind.

*Latta*, 2009 WL 387731, at *2.

Petitioner contends that these facts are similar to those in *People v. Patrella*, 424 Mich. 221, 380 N.W. 2d 11 (1985), decided jointly with *People v. Simpson*. In *People v. Simpson*, a father took his daughter out to some land in the country, forcibly raped her, then took her back to her mother's house. The only testimony as to the daughter's condition that the court found was that she was upset

and crying after the incident.  However, this is not the case here.  In *People v. Patrella* and *People v. Simpson*, the court mentioned some factors (not an exhaustive list) that would assist supporting a finding of mental anguish.  "We stress that each case must be decided on its own facts, and that no single factor listed below should be seen as necessary to a finding of mental anguish."  *Petrella*, 424 Mich. at 270, 380 N.W. 2d at 33.  The facts of this case show three distinct factors that the Michigan Court of Appeals has used to demonstrate mental anguish.  First, there was "testimony that the victim was upset, crying, sobbing, or hysterical during or after the assault."  *Id.*  In this case, the school counselor, a police officer, and the paramedics who treated her just after the assault all testified that the victim was upset, distraught, hysterical and even attempted to strike a paramedic when she approached her.  Petitioner contends that the state's determination of the facts here is unreasonable because "it was not uncharacteristic of Janel Kolens to deal with stressful teenage issues without going into the fetal position, rocking back and forth crying."  Petitioner's Reply, at 1 (internal quotations omitted).  However, this statement is immaterial to the evidence presented at trial that established the victim's mental state after the incident.

In addition to testimony that established that the victim was upset and hysterical after the incident, another factor that the Michigan Court of Appeals discussed was "evidence that the emotional or psychological effects of the assault were long-lasting."  *Patrella,* 424 Mich. at 270, 380 N.W. 2d at 33.  Petitioner's brief acknowledges that Megan Shafer, a high school friend of the victim, testified at trial that "she told me she's never, ever going to be normal."  Petitioner's Brief in Support of Habeas Petition, at xii.  Additionally, the Michigan Supreme Court stated that "[a] lingering fear, anxiety, or apprehension about being in vulnerable situations in which the victim may be subject to another attack."  *Patrella*, 424 Mich. at 270-71, 380 N.W. 2d at 33.  As the Michigan

11

Court of Appeals noted in it's decision, there was ample evidence to establish that the victim felt continuing fear and apprehension as a result of petitioner's conduct.  The victim's mother testified that her daughter was afraid to go home, to be in the house, and when the phone rang.  The victim's aunt also testified that petitioner called the house after the incident to speak with the victim, and she handed the phone to her aunt and started crying, appearing afraid.

Overall, petitioner's contention that this case is similar in fact to *People v. Simpson* is simply incorrect.  The Michigan Supreme Court did find that "the testimony that complainant was crying and upset" was insufficient by itself to prove mental anguish beyond a reasonable doubt.  *Patrella*, 424 Mich. at 274, 380 N.W. 2d at 35.  However, in that case the primary testimony as to the victim's mental state at the time of the incident was from the daughter and the defendant.  There was also testimony from the victim that she did not report it to the police because she "just never really gave it too much thought." *Id.* at 272, 380 N.W. 2d at 34.  Finally, the main difference between these two cases is that, in this case, there is evidence lending support to a finding of mental anguish in more than one category considered by the Michigan Supreme Court.  In *Simpson*, the major problem the court found was that the prosecution and lower court relied on the inference that the victim being the natural daughter of the defendant created mental anguish rising to the standard for this statute. *Id.* at 274.  The court did not find that such an inference cannot be made, but that it must have supporting evidence at trial instead of just being assumed. *Id.*

Therefore, contrary to petitioner's assertion, these cases are significantly different.  In the case at bar, multiple witnesses testified that the victim was beyond crying and upset, and instead that she was hysterical to the point that she attempted to strike a paramedic attempting to help her.  Additionally, there was testimony that she feared going home and being in the house.  Finally, there

12

was also testimony from her aunt that she became fearful and ran and hid when petitioner attempted to call her after the incident.

Petitioner also claims that there was insufficient evidence to prove beyond a reasonable doubt that the victim was mentally incapacitated, which is defined as a temporary state induced by a substance given against the victim's consent. MICH. COMP. LAWS § 750.520a(j). Petitioner argues that, because the victim drank the alcohol voluntarily, she could not be mentally incapacitated. However, the statute requires only that "[t]he actor knows or has reason to know that the victim is mentally incapable, mentally incapacitated *or* physically helpless." MICH. COMP. LAWS § 750.520b(g) (emphasis added). Therefore, petitioner's assertion that this element is not satisfied because the victim voluntarily drank the alcohol is without merit because the prosecution need only prove one of the three listed states. Under the statute, the term "physically helpless" means "a person is unconscious, asleep, or for any other reason is physically unable to communicate unwillingness to an act." MICH. COMP. LAWS § 750.520a(m). Thus, even if the victim was not mentally incapacitated, petitioner's conviction is valid if she was "physically helpless."

Petitioner argues that the fact that the victim was able to recall the encounter "with specificity", proves she was not physically helpless. Petitioner's Brief in Support of Habeas Petition, at 7. However, the fact that the victim was able to vaguely recall the incident does not mean that she was not physically helpless in the sense that she was unable to consent to the act. The victim testified that she felt, "groggy, but kind of funny" and that she was going "in and out of it" on the floor. This is similar to *People v. Cain*, where the victim voluntarily became intoxicated prior to her assault. The court held, "The evidence of the victim's intoxication, which caused her to go in and out of consciousness, fits within the statutory definition of physical helplessness." *People*

13

*v. Cain*, No. 219563, 2000 WL 33402999, at *3 (Mich. Ct. App. Nov. 3, 2000).

Further, the evidence of physical helplessness was not confined to the victim's testimony. The emergency room nurse, Nurse Kopacz, and a paramedic both testified that the victim was "groggy", "lethargic" and "could barely stay awake." Petitioner cites the testimony of Police Officer Shutts as evidence for his claim to insufficiency because the officer testified that a person with a BAC of .08 "would be awake and alert" and that "he had never seen anyone pass out with that blood alcohol content." Petitioner's Brief in Support of Habeas Petition, at 8. However, this is not a matter of whether she *should* have been physically helpless after drinking as much as she did, but rather is a question of whether there was evidence that she *was* rendered physically helpless after drinking.

In addition to the fact that there was corroborating evidence from the nurse and the paramedic, it is reasonable that the jury inferred corroboration from petitioner's own testimony at trial. Petitioner testified that he dressed the victim and carried her to the bed after the sexual act. Though petitioner states in his brief that this was not due to her drunkenness, in light of the other evidence, it is reasonable to infer that petitioner did carry the victim to the bed and redressed her because she was physically unable to do those things at the time. When reviewing a sufficiency of evidence claim, a habeas court must view all the evidence as a whole. Petitioner's own testimony, when taken with the testimony of others, leads to the reasonable inference that the victim was physically helpless at the time of the encounter.

Petitioner claims that there was insufficient evidence to convict him under three distinct elements of the crime of CSC-I. The question before a federal court on habeas review is whether petitioner's insufficiency claim meets the standard set forth in *Jackson v. Virginia*. "[T]he relevant

14

question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could find that the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Judicial deference must also be given to both the trial court, respecting the factfinder's determinations, and to the higher court if they decided the case on it's merits. In this case, there was evidence for each element that petitioner disputes which could lead a rational trier of fact to find each element beyond a reasonable doubt. Additionally, the Michigan Court of Appeals found, on the merits, that the evidence was sufficient to convict petitioner. Petitioner has made no showing, based upon the record, that would justify habeas relief in this case.

      2.    *Denial of a Fair Trial Based on Prior Bad Acts Evidence*

Petitioner asserts that he was denied a fair trial because the trial court admitted, over objection, the admission of petitioner's prior conviction for assault to commit sexual penetration against his niece. Petitioner states in his brief that the prosecutor moved to introduce the conviction late and the trial court ruled that the conviction lacked probative value and was inadmissible. Then the prosecutor asked to the court to reconsider, due to the potential testimony of the police officer who first interviewed petitioner. At the time of the first interview, petitioner denied being at the victim's house and told the police that he does not put himself in the position to be alone with young girls due to his prior CSC conviction. The trial court then took the issue under advisement, and eventually ruled that the statement was relevant and not unduly prejudicial. In addition to admitting the statement to the police into evidence, the trial court also allowed the victim to address her knowledge about petitioner's prior conviction when she testified. Petitioner contends that the admission of his prior conviction under the Michigan Rule of Evidence 404(b) violated his

constitutional right to due process under the fourteenth amendment to the constitution.

Petitioner states that, for the evidence to be admissible, it must also be relevant. Relevant evidence is defined as, evidence having any tendency to make the existence fo any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MICH. R. EVID. 401. If the evidence is relevant, it can still be excluded if "it's probative value is substantially outweighed by the danger of undue prejudice." MICH. R. EVID. 403. As defined by the Michigan Supreme Court, "[e]vidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v. Crawford*, 458 Mich. 376, 398, 582 N.W. 2d 785, 796 (1998).

Though it is arguable that this evidence does meet the probative versus prejudice test under MICH. R. EVID. 403, the question itself is irrelevant because, as the court of appeals noted, it is admissible under MICH. COMP. LAWS §768.27a. MICH. COMP. LAWS § 768.27a(1) states "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." In this case, petitioner's prior conviction is a listed offense such that § 768.27a applies.[2] In *People v. Watkins*, the Michigan Supreme Court held that Rule 404(b) conflicts with §768.27a, but that §768.27a prevails over rule

---

[2]Petitioner's prior conviction was for assault with intent to commit sexual penetration involving his minor niece. *See Latta*, 2009 WL 387731, at *3. Because both the prior victim and the victim in this case were under 18 years old at the time of the offenses, §768.27a was applicable if they constituted "listed offenses." *See* MICH. COMP. LAWS §768.27a(2)(b) (defining "minor" as "an individual less than 18 years of age."). Under the statute, a "listed offense" is one set forth in MICH. COMP. LAWS §28.722. Both assault with intent to commit sexual penetration and CSC-I are listed offenses under §28.722. *See* MICH. COMP. LAWS §28.722 (u)(ix), (w)(iv).

16

404(b).  *People v. Watkins*,491 Mich 450, __, __ N.W. 2d __, 2012 WL 2076841, at *9-*10 (2012).
Therefore, even if the evidence was inadmissible under Rule 404(b), it can be admissible under
§768.27a without having to meet the restrictions of Rule 404(b).  The Michigan Court of Appeals
addressed this issue on the merits and found that the evidence was relevant under Rule 401 and that
petitioner was unable to establish undue prejudice under Rule 403.  Additionally, that the evidence
would also be admissible under §768.27a.

Respondent correctly argues that this claim is not cognizable in a federal court on habeas
review.  Petitioner disputes this claim by citing *McKinney v. Rees*, 993 F.2d 1378 (9th Cir. 1993).
In this pre-AEDPA case, the court found that irrelevant prior bad acts evidence, probative only on
the issue of character, was the backbone of the case and that this rendered the trial  fundamentally
unfair to the defendant.  *Id.* at 1385.  In this case, the prior bad acts evidence was only a portion of
the evidence presented against petitioner, and the finding of the 9th Circuit does not represent clearly
established federal law under AEDPA because it is not a Supreme Court decision.  Petitioner also
cites *Tucker v. Makowski*, 883 F.2d 887, 881 (10th Cir. 1989), as standing for the proposition that
"improper admission of other crimes evidence rose to the level of a due process violation."  Pet'r's
Brief in Support of Habeas Petition, at 10.  Aside from the fact that this is also a pre-AEDPA circuit
court case, the court also did not hold the conclusion that petitioner states.  In fact, the court stated,
"[b]y remanding, we make no comment on the merits of petitioner's allegations. We note that 'state
court rulings on the admissibility of evidence may not be questioned in federal habeas proceedings
unless they render the trial so fundamentally unfair as to constitute a denial of federal constitutional
rights.'"  *Tucker v. Makowski*, 883 F.2d 877, 881 (10th Cir. 1989) (internal quotations omitted).

As to clearly established law as decided by the Supreme Court, the petitioner cites *Duncan*

17

*v. Henry*, where the Court decided whether a petitioner had exhausted a claim in state court regarding a perceived evidentiary violation when the petitioner did not raise the evidentiary claim specifically as a due process violation until he filed in federal court for habeas relief. *Duncan v. Henry*, 513 U.S. 364 (1995). Petitioner contends that this decision assumes cognizability of this type of claim. Petitioner's Brief in Support of Habeas Petition, at 10. However, the Court stated in *Williams* that clearly established law as decided by the Supreme Court "[r]efers to the holdings, as opposed to the dicta, of this Court's decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Therefore, because the support for the evidentiary claim was not the holding of this case, it is inapplicable under the AEDPA standard.

Petitioner's contention is most similar to the facts in *Flores v. Adams*, where the petitioner claimed that admission of evidence of prior bad acts was a violation of his right to due process of law under the Fourteenth Amendment. *Flores v. Adams*, 319 Fed. Appx. 514 (9th Cir. 2009). The court cited it's holding in *Alberni v. McDaniel*, where it "held that the admission of propensity evidence did not entitle a petitioner to habeas relief because there is no clearly established Supreme Court precedent holding that the admission of such evidence is a violation of due process." *Flores v. Adams*, 319 Fed. Appx. 514, 514 (9th Cir. 2009) (citing *Alberini v. McDaniel*, 458 F.3d 860, 863-864 (9th Cir. 2006)); *see also Estelle v. McGuire*, 502 U.S. 62, 75 n. 5 (1991). Petitioner claims that the evidence admitted was so egregiously prejudicial that it rendered petitioner's trial fundamentally unfair. "[T]he Supreme Court has defined 'very narrowly' the category of infractions that violates 'fundamental fairness.'" *Bey v. Bagley*, 500 F.3d 514, 522 (6th Cir. 2007) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). The evidence of prior bad acts was only one piece of evidence among many more that lead to petitioner's conviction; therefore, it could not possibly have

18

rendered the trial fundamentally unfair such that it could violate petitioner's constitutional rights. The decision of the court of appeals, that the evidence was not admitted in error, is not contrary to any Supreme Court precedent.

Petitioner requests that this court grant habeas relief on a state court determination of a state's rule of evidence. As respondent rightly asserts, this is not the purview of federal courts on habeas review. The Supreme Court has not spoken directly on the admissibility of prior bad acts evidence, and has carved out a very tiny realm of exceptions. The evidence in this case was properly admitted under state law, and even if this court finds that it was not, it cannot overturn a state court determination on a state law issue simply because it disagrees with it.

3.    *Ineffective Assistance of Counsel for Failing to Object to Jail Reference*

Petitioner's third claim is that he was denied a fair trial due to ineffective assistance of counsel when counsel failed to object to the testimony of Deputy King, who testified that he interviewed petitioner while petitioner was incarcerated for an unrelated ticket and when counsel asked petitioner to testify about where he was living, forcing petitioner to admit to living at a homeless shelter. After the victim wrote a letter identifying petitioner as the person who assaulted her, Deputy King went to find petitioner in order to question him regarding the victim's allegation. Deputy King found petitioner in Branch County Jail, where petitioner was incarcerated due to an unrelated ticket that he claims he had forgotten about. When Deputy King was testifying at trial, he stated that he went to question petitioner and that he found him in the Branch County Jail. Petitioner's counsel did not object to the testimony or request a curative instruction regarding the admission that petitioner was incarcerated when Deputy King came to question him. Counsel addressed the issue upon direct examination of petitioner, by asking petitioner what he had been

19

incarcerated for, and petitioner testified that he was in jail for a ticket he had forgotten about and that he paid it and was released.  Petitioner contends that his counsel was ineffective in failing to object to Deputy King's testimony and/or requesting a curative instruction for the jury regarding Deputy King's testimony.

Petitioner also contends that his character was damaged when his counsel, upon direct examination, asked petitioner where he was living at the time of his second interview with police which forced petitioner to testify that he was living in a homeless shelter at the time.  Petitioner states that the trial was essentially a credibility battle between himself and the victim and that the damage to his character caused by the jury hearing, without objection, that he was in jail and that he had been homeless, "tipp[ed] the idealistic scales of justice against him."  Petitioner's Brief in Support of Habeas Petition, at 16.

The standard for evaluating ineffective assistance of counsel claims was determined by the Supreme Court in *Strickland v. Washington*.  The Court stated "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  To meet the first prong of this test,  "the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  The Court was clear that judicial review of counsel's performance must be highly deferential, and that, to prove the first prong, counsel's performance must be objectively unreasonable. *Id.*  The reasoning for the highly deferential standard is that, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge

a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

The second prong of the *Strickland* test asks whether, "the deficient performance prejudiced the defense." *Id.* The Court held that the sufficient prejudice exists when a petitioner can show that it is reasonably possible that, but for the error of counsel, the outcome of the verdict would have been different. *Id.* at 698. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. The Court also clearly stated that a court applying this test need not examine the behavior of counsel first. *Id.* at 697. A court adjudicating a ineffectiveness claim may deny the claim for want of prejudice without having to examine counsel's alleged insufficient conduct. *Id.* Though a court may look at either prong when dismissing an ineffectiveness claim, a petitioner must show both that (1) counsel's actions were objectively unreasonable such that it overcomes the strong presumption of reasonableness, and (2) that it is also reasonably probable that, but for counsel's error, the verdict would have been different.

Regarding petitioner's first allegation that counsel was ineffective in failing to object or to request a jury instruction on Deputy King's testimony, the Michigan Court of Appeals quoted the questioned testimony:

> During the prosecutor's direct examination of a police officer, the following exchange occurred:
> Q. Did there come a point in time in which you received some further information regarding who the perpetrator of this sexual assault was?

> A. Right . . . the letter that the victim had written naming the perpetrator as Mr. Latta.
>
> Q. Based upon the information that you now had about a potential perpetrator, did you contact Mr. Latta?
>
> A. Yes.  I went out to the place on Gerald Street, which is just probably a block, block-an-half from where the incident took place, and he wasn't there.  *I later found out that he was at the Branch County Jail.*  And I contacted him there in the - - at the Branch county jail and interviewed him there.
>
> Q. And, when you interviewed him, did you advise him of his what's known as Miranda Rights?
>
> A. Right. Right. [Emphasis added.]

*Latta*, 2009 WL 387731, at *4.  The Michigan Court of Appeals then went on to correctly analyze this issue under the *Strickland* test, looking at whether counsel's failure to object to this testimony was objectively unreasonable.  *Id.*  The appeals court determined that petitioner had not overcome the presumption, demanded by *Strickland*, that counsel's failure to object was not a reasonable trial strategy.  Moreover, the court discussed the possibility that counsel felt, at the time, that it was so brief and isolated that counsel chose not to draw more attention to it through objection.  The court also considered that the fact that counsel later addressed the issue during direct examination of petitioner in order for petitioner to tell the jury that it was simply an outstanding traffic ticket and that he was released after he paid it.  It is more than possible that counsel made a strategic choice to address the testimony when petitioner could explain the circumstances so as to not draw undue attention to it.  Therefore, due to the deference required to the court of appeals determination and the fact that petitioner has failed to meet the first prong of *Strickland*, this claim does not warrant habeas relief.

Petitioner's second ineffectiveness of counsel claim is regarding the fact that, during his testimony, his counsel asked him where he was living at the time of the second police interview. Petitioner states that this question forced him to answer that he was living at a homeless shelter and

that this was unduly prejudicial to his defense.  This claim is based on the following exchange:

> Q. You were subsequently interviewed by another detective. Where were you living at that time?
>
> A. Are you talking about Detective Nichols?
>
> Q. In Coldwater.
>
> A. Where in Coldwater?
>
> Q. I - - for about a week, I was - - I went back to my wife for a short time. And it didn't work out, so I moved back to Coldwater. I was waiting for an apartment to open up that I was going to get. *So for about a week I stayed at the Mission.* [Emphasis added.]

*Latta*, 2009 WL 387731, at *5.  Petitioner contends that eliciting the response that he lived in a homeless shelter was highly prejudicial during the trial due to the fact that his credibility was central to his defense.  Petitioner cites multiple Michigan cases regarding the admissibility of prior bad acts evidence or evidence of poverty being used to establish motive.  However, that is not the issue at hand here.  The question, under the first prong of *Strickland*, addresses whether or not it was objectively reasonable for counsel to ask this question.  When addressing this question, the court of appeals stated that it appeared as if counsel was attempting to highlight that petitioner was not in jail at the time of the second interview, which would give greater credibility to his previous testimony that, when he was in jail, it was for an unpaid ticket that he paid and was immediately released.

The response that petitioner was in a shelter for a week while awaiting an apartment due to a marital separation cannot reasonably be said to be either evidence of poverty or of prior bad acts, and any reasonable juror would not find it indicative of bad character.  Counsel's questioning is arguably strategic, as the court of appeals noted, and does not rise to the standard of objectively unreasonable given the circumstances at the time counsel made that choice.  Additionally, even if it could be argued that it was an unreasonable decision on counsel's part, it does not rise to the standard of prejudice in *Strickland* either.  It is not reasonably possible, given the evidence

23

presented, that without the question that elicited this testimony that petitioner would not have been convicted of CSC-I.

4.     *Ineffectiveness of Counsel for Failing to Object to Religious References*

Petitioner contends that he was denied a fair trial and effective counsel because counsel failed to object to testimony from her mother that the victim was "God-fearing" and "really got the faith."   As discussed in the last issue, ineffectiveness of counsel claims are analyzed under the *Strickland* test.   The exchange in question was highlighted by the appeals court:

> Q. Now, can you describe [the victim] for the jurors?
>
> A. She's very quiet. Emotionally, she's a little younger. Quite naEve [sic]. Too trusting. Just very quiet, withdrawn girl. Spent a lot of time in her bedroom. Didn't really have a lot of relationships. Wasn't super inactive with people.
>
> Q. Now, in general, how did [the victim] dress?
>
> A. Oh, she always wore layer of clothes. Even in the summertime, it was undergarments, then it was tank tops, long-sleeved shorts and a sweater over that. Always layers.
>
> Q. Would you characterize her as being somebody that was promiscuous?
>
> A. Never. She visited her father in Florida, and would not even wear just a bathing suit on the beach. And that covered up, as well. *She's also very God fearing. She loves the church, believes in it. And that's more important that just loving it. She's really got the faith*, so.
>
> Q. We've heard some . . . questions asked about thong underwear. Did [the victim] own any thong underwear that you knew of?
>
> A. No. No. She - - she didn't even like regular bikini underwear[.] [Emphasis added.]

*Latta*, 2009 WL 387731, at *5.  The Michigan Court of Appeals acknowledged that petitioner was correct in his assertion that a prosecutor may not question a witness about religious beliefs, or whether those beliefs affect credibility pursuant to MICH. RULE EVID. 610.  The testimony as to the victim's faith was not elicited by the prosecutor, instead it was spontaneously given by the witness in response to a question regarding promiscuity.  For petitioner to prevail on this claim, he must

show that this testimony so prejudiced the trial that it was a reasonable possibility that the outcome would have been different. The court of appeals was correct in noting that the prosecutor quickly responded to the mother's comments, and immediately redirected the testimony. *Id.* It is also important to note that this testimony did not come out of the blue. There was testimony that both petitioner and the victim were members of a church, and had engaged in activities together at the church prior to the incident. *Id.* It was not objectively unreasonable for defense counsel not to object to this testimony when it was not solicited and immediately redirected. Additionally, the testimony could not be said to have prejudiced the trial to the point that it is reasonably possible that the outcome would have been different had defense counsel objected to the testimony.

5.    *Sentencing Guidelines*

Petitioner contends that he was scored incorrectly on offense variables 3, 10 and 11 and that he was sentenced based on incorrect, and unproven, allegations made by the victim during the sentencing proceedings. Petitioner asserts that he is entitled to be re-sentenced as a result of the perceived errors made by the trial court in this matter.

Petitioner contends that OV 3, 10 and 11 were scored incorrectly; however challenges to state sentencing decisions are not cognizable on habeas review. "In the area of state sentencing guidelines in particular, we consistently have held that federal courts can not review a state's alleged failure to adhere to its own sentencing procedures." *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. Fla. 1988); *see also Jones v. Estelle*, 622 F.2d 124, 126 (5th Cir.1980). It is well established that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502

25

U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Petitioner's claim that the court improperly scored the guidelines range raises issues of state law that are not cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); *see also*, *Branan*, 851 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review). Thus, petitioner is not entitled to habeas relief on his claim related to the trial court's scoring of the Michigan sentencing guidelines.

Petitioner cites *Walker v. Deeds*, 50 F.3d 670 (9th Cir. 1995), a pre-AEDPA case, to support his claim that misapplication of the state sentencing guidelines is cognizable on habeas review. The *Walker* court held that the Nevada trial court's application of their habitual offender statute violated the defendant's due process rights. The court found that Nevada law required that a defendant have an individualized assessment that shows it was "just and proper" for him to be judged a habitual offender and that the trial court did not apply the Nevada law appropriately in this case. This case is not applicable to the case at bar. Unlike the 9th Circuit finding in *Walker*, there is no state created liberty interest that is being violated here. Michigan trial courts have discretion to score guidelines as they see fit, so long as there is evidence to support the scoring. *People v. Hornsby*, 251 Mich. App. 462, 468, 650 N.W. 2d 700, 704 (2002). The *Hornsby* court also stated that a scoring decision would be upheld as long as there is "any evidence in support" of the decision. *Id.* (quoting *People v. Elliot*, 215 Mich. App. 259, 260, 544 N.W. 2d 748, 749 (1996)). Therefore, unlike what the court found in *Walker*, there is not a state created restriction on the scoring of the guidelines in this case.

26

Petitioner's second claim is that the trial court based sentencing on inaccurate information in the form of testimony by the victim during the sentencing proceedings. In *Townsend v. Burke*, 334 U.S. 736 (1948), and *United States v. Tucker*, 404 U.S. 443 (1972), "the United States Supreme Court invalidated defendants' sentences because they were imposed by trial courts in reliance upon material false assumptions of fact." *Eutzy v. Dugger*, 746 F. Supp. 1492, 1504 (N.D. Fla. 1989) (discussing *Townsend* and *Tucker*); *accord Stewart v. Peters*, 878 F. Supp. 1139, 1144 (N.D. Ill. 1995) (same). *See generally*, *Tucker*, 404 U.S. at 448-49; *Townsend*, 334 U.S. at 740-41. It is well established, however, that a *Tucker* violation arises only where the improper information "actually served as the basis for the sentence." *United States v. Jones*, 40 Fed. Appx. 15, 17 (6th Cir. 2002) (internal quotation omitted); *see also*, *Lechner v. Frank*, 341 F.3d 635, 639 (7th Cir. 2003); *United States v. Johnson*, 767 F.2d 1259, 1276 (8th Cir. 1985). "A sentencing court demonstrates reliance on misinformation when the court gives 'explicit attention' to it, 'found[s]' its sentence 'at least in part' on it, or gives 'specific consideration' to the information before imposing sentence." *Lechner*, 341 F.3d at 639 (quoting *Tucker*, 404 U.S. at 444, 447). Thus, to be entitled to habeas relief on this claim petitioner "must show that the sentencing court actually relied on this information and that it was materially false." *Hanks v. Jackson*, 123 F. Supp. 2d 1061, 1074 (E.D. Mich. 2000) (Gadola, J.).

The evidence in question were statements made by the victim during the sentencing proceedings:

> When addressing the court at sentencing, the victim began by stating that 'there is [sic] other families here' and that she was speaking for herself and for 'other victims,' who 'cannot speak for themselves, whether it is because they are too young, handicapped or just too terrified to face him.' The victim then discussed at length how the incident seriously affected her life. Near the end of her remarks, the victim

27

referred to defendant as a

> habitual sex offender, with a history starting back when he was an adolescent, possibly before. He has proven that not even children in his own family is [sic] safe. He is a predator that gains the trust of an innocent child, uses it against them and steals their innocence away.

*Latta*, 2009 WL 387731, at *7. It is petitioner's contention that he was sentenced based on this testimony and that, though he questioned the validity of the victim's statements, the prosecutor was not required to prove that her statements were true. The Michigan Court of Appeals applied the correct Supreme Court rule to this case and found that;

> [T]he trial court's remarks when imposing sentence do not indicate that the court considered the victim's 'unsubstantiated allegations' or 'emotional appeal' concerning 'other victims.' Rather, the court focused on defendant's predatory and manipulative conduct toward the victim:
>
>> While it is really not for me to say whether your words just spoken are hollow or whether [the victim] should accept them as an apology, I will leave that to her sound discretion.
>>
>> The Court would only indicate to her that I believe that she is far stronger than she might perceive herself to be.
>>
>> Mr. Latta, I, as I said, sat through the trial. I heard the testimony. I've already indicated, as we've addressed the sentencing guidelines, my belief as well, slanderous or otherwise, that you, in fact, were a predator who set out to see how far you could take the circumstances with [the victim].
>>
>> Quite frankly, I was convinced, as, again, I believe the jury was, that there was no relationship other than the one conjured up in your imagination, one of manipulation and of a predatory nature.
>>
>> The harm and damage that was done I do not believe yet can be measured entirely. I do believe that under all the circumstances it is my responsibility to remove you from this community for a significant period of time.

*Latta*, 2009 WL 387731, at *7-*8. Therefore, the appeals court found that the victim's testimony was not the basis for the trial court's decision on sentencing. Additionally, the appeals court also found that petitioner did not directly dispute the testimony of the victim during his allocution aside from stating, "[i]t overwhelms me to hear the statements of slander." *Id.* Though it does not appear

that petitioner directly challenged the statements of the victim, it still does not provide a basis for habeas relief.  Petitioner must show that the trial court based his sentencing on the erroneous information and that the information was materially false.  *Hanks*, 123 F. Supp. 2d at 1074. Petitioner has failed to show that his sentencing was based, in whole or in part, on the statements of the victim.  The trial judge clearly stated that the predatory behavior he was basing petitioner's sentence on was proven at trial beyond a reasonable doubt.  The court of appeals applied the correct clearly established law to this issue, and found that the sentencing was proper and petitioner has failed to show that the appeals court decision was contrary to, or an unreasonable application of clearly established federal law.  Therefore, habeas relief is not warranted.

E.     *Recommendation Regarding Certificate of Appealability*

1.     *Legal Standard*

Pursuant to the Antiterrorism and Effective Death Penalty Act, a certificate of appealability must be issued for a petitioner to appeal a denial of a writ of habeas corpus.  28 U.S.C. § 2253(c)(1). To qualify for a certificate of appealability, a petitioner must show "a substantial showing of the denial of a constitutional right."   29 U.S.C. § 2253(c)(2).   A "substantial showing" is a less restrictive standard than what is required to obtain a writ, but still requires that a petitioner show that their claim should be forwarded for further review.  The Supreme Court has stated,

> To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'

*Slack v. McDaniel*, 529 U.S. 473, 483-84 (U.S. 2000) (quoting *Barefoot v. Estelle*, 463 U.S. at 893,

29

and n. 4 ("summing up" the "substantial showing" standard).  The Sixth Circuit has noted that the language in § 2253(c)(2) is simply a codification of the Supreme Court's decision in *Barefoot* and that there is no change under the AEDPA as to "the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); accord *Slack*, 529 U.S. at 483.  Though the standard for receiving a certificate on the merits has remained the same, the AEDPA "require[s] that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073 (citing 28 U.S.C. § 2253(c)(3)).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts provides that, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a), 28 U.S.C. foll. § 2254.  This rule was enacted in December 2009 and omits the requirement in the Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments.  The following recommendation is in accordance with Rule 11(a)'s requirement that the court grant or deny a certificate concurrent with its final adverse order.

2.    *Analysis*

Petitioner has not established a substantial showing under any of his claims that would warrant granting a certificate of appealability.  As to the first claim, that there was insufficient evidence to convict petitioner of CSC-I, petitioner has failed to show this court that reasonable jurists could disagree with the finding of both the trial court and the Michigan Court of Appeals.  Petitioner's insufficiency claim rests on how the state applied state law, and this is not an issue that

30

is cognizable in this court. Both the trial court and the appeals court found there was ample evidence to convict petitioner, and petitioner has made no substantial showing from the record that would overcome the presumption of correctness due to the state courts.

The second claim, that the admission of prior bad acts deprived petitioner of a fair trial has also not met the standard for granting a certificate. Again, the admission of the evidence in dispute is a matter of state law, and petitioner has made no substantial showing that the rulings of the trial court and appeals court were unreasonable, or contrary to clearly established federal law. Petitioner also raised two ineffective assistance of counsel claims, where petitioner seeks habeas relief because his counsel failed to object to the unsolicited reference that he was incarcerated when he was interviewed by the police, posed a question to petitioner during examination that forced petitioner to admit to living in a shelter for a week, and failed to object to an unsolicited reference to the victim's faith made by her mother. None of these three claims warrant encouragement to continue by granting a certificate. Petitioner has failed to substantially show that defense counsel's decisions were objectively unreasonable, or that they prejudiced his trial to the point that the perceived errors would have changed the outcome. Since petitioner was not able to give any weight to either prong of the *Strickland* test, he has not shown this Court that these claims warrant encouragement to go further.

Petitioner's last claim is twofold. First, that the trial court misapplied the Michigan Sentencing Guidelines to his case. However, as stated previously, state court decisions on state law are not cognizable on habeas review. Petitioner's second contention is that he was sentenced based on inaccurate information. To show a constitutional violation on this claim, petitioner must show that (1) he was sentenced based, in whole or in part, on the erroneous information, and (2) that the

31

information was, in fact, materially false. As the excerpt from the trial court judge at sentencing shows, petitioner was not sentenced based on the statements made by the victim. The predatory behavior that the trial judge noted during sentencing was based on evidence proven at trial, which is also the conclusion that the court of appeals came to as well. Again, petitioner has not made any substantial showing of a constitutional violation that is evident from the trial court record. Therefore, this Court should not grant a certificate of appealability.

F.      *Conclusion*

In light of the analysis of petitioner's claims, the court should conclude that the state courts' determinations do not amount to a resolution that is either contrary to, or an unreasonable application of clearly established federal law. For the foregoing reasons, the court should deny petitioner's application for the writ of habeas corpus. If this Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.    <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any

32

objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: August 27, 2012                    s/Paul J. Komives_____
                                          PAUL J. KOMIVES
                                          UNITED STATES MAGISTRATE JUDGE


   I hereby certify that a copy of the foregoing document was sent to parties of record on August 27, 2012 electronically and or by U.S. mail.

                                          s/ Michael Williams___
                                          Relief Case Manager to the Honorable
                                          Paul J. Komives